Spain, J.
Respondent New York State Racing and Wagering Board (hereinafter Board) has general jurisdiction over all horse racing and pari-mutuel betting activities in New York, including off-track betting (see Racing, Pari-Mutuel Wagering and Breeding Law § 101 [1]). As part of that authority, the Board oversees the simulcast of races conducted at New York race tracks (see Racing, Pari-Mutuel Wagering and Breeding Law §§ 1002 [1]; *1045 1007-1009).* Among the entities that contract with New York tracks to simulcast races, and thus participate in the pool of pari-mutuel wagering on those races, are secondary pari-mutuel operators (hereinafter SPMOs), entities that do not conduct racing themselves (see Racing, Pari-Mutuel Wagering and Breeding Law § 905). Before 2008, as a condition of granting approval for out-of-state SPMOs to enter into simulcast agreements with New York tracks, the Board generally required that those SPMOs agree to refrain from accepting wagers from New York residents on races run at New York tracks (hereinafter the NY resident restriction). In January 2008, the Board reversed that policy and began to approve simulcast agreements between New York tracks and out-of-state SPMOs that did not include the NY resident restriction.
Petitioners, five of the six New York State regional off-track betting corporations, commenced this combined CPLR article 78 proceeding and declaratory judgment action in February 2010 to, as relevant to this appeal, challenge the Board’s change in policy with regard to the out-of-state SPMOs as unconstitutional and illegal. The Board answered and asserted, among other things, that petitioners’ challenge to the policy change was untimely. Supreme Court, assuming that petitioners’ claims were not barred by the statute of limitations, dismissed the petition on the merits. Petitioners appeal and we affirm, albeit on different grounds.
In determining the limitations period to be applied in a declaratory judgment action, a court must look to the underlying claim and the nature of the relief sought and determine whether such claim could have been properly made in another form (see Kreamer v Town of Oxford, 91 AD3d 1157, 1158-1159 [2012]; Matter of Save the Pine Bush v Town Bd. of Town of Guilderland, 272 AD2d 689, 691 [2000]; Matter of Frontier Ins. Co. v Town Bd. of Town of Thompson, 252 AD2d 928, 929 [1998]). Petitioners seek to challenge the Board’s change in policy as it relates to out-of-state SPMOs as unconstitutional and contrary to state law. Where, as here, the challenge brought is to a quasi-legislative act or decision made by an administrative agency, it is well settled that the proper vehicle for such review is a CPLR article 78 proceeding and the four-month statute of limitations applies (see CPLR 7803 [2]; Walton v New York State Dept. of Correctional Servs., 8 NY3d 186, 194 [2007]; Matter of Town of Olive v City of New York, 63 AD3d 1416, 1418 *1046 [2009]; New York Coalition for Quality Assisted Living, Inc. v Novello, 53 AD3d 914, 916 [2008], lv denied 11 NY3d 715 [2009]).
The question then arises as to when the limitations period began. A petitioner seeking CPLR article 78 review of a determination must do so “within four months after the determination to be reviewed becomes final and binding upon the petitioner” (CPLR 217 [1]; accord Walton v New York State Dept. of Correctional Servs., 8 NY3d at 194). When making the determination as to whether an agency determination is final, courts must consider the completeness of the administrative action and make a pragmatic evaluation as to whether a position has been reached that inflicts an actual, concrete injury (see Walton v New York State Dept. of Correctional Servs., 8 NY3d at 194; Matter of Essex County v Zagata, 91 NY2d 447, 453 [1998]; Matter of Adams v Carrion, 85 AD3d 1517, 1518 [2011], lv denied 17 NY3d 717 [2011]). Consideration must also be accorded to whether further resort to administrative remedies by the complaining party might serve to ameliorate the injury (see Matter of Adams v Carrion, 85 AD3d at 1518).
Here, the Board’s change in policy occurred in January 2008 and the record demonstrates that petitioners participated in a conference call with the Board’s counsel at the end of that month during which they were informed of the change and that agreements with out-of-state SPMOs had been approved without the NY resident restriction. As the gravamen of petitioners’ claim is that the policy change put them at a competitive disadvantage, it is clear that an actual and concrete injury occurred, if at all, in January 2008. Additionally, further administrative action as of that time would have been unavailing in light of the fact that certain agreements had already been approved pursuant to the revised policy (see Matter of Essex County v Zagata, 91 NY2d at 452; Matter of Town of Olive v City of New York, 63 AD3d at 1418; Matter of Fishman v Mills, 294 AD2d 764, 765-766 [2002]). This proceeding commenced in February 2010 was therefore untimely, as it was initiated well after the four-month statute of limitations had expired.
Peters, PJ., Malone Jr., Kavanagh and Garry, JJ., concur. Ordered that the order and judgment is affirmed, without costs.

 A simulcast is “the telecast of live audio and visual signals of . . . horse races conducted in the state for purposes of pari-mutuel wagering” (Racing, Pari-Mutuel Wagering and Breeding Law § 1001 [a]).