*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  June 11, 2015                    520040
_____

In the Matter of PARK MANOR
    REHABILITATION AND HEALTH
    CARE CENTER, LLC,
                        Appellant,
        v                                    MEMORANDUM AND ORDER

NIRAV SHAH, as Commissioner
    of Health of the State of
    New York, et al.,
                        Respondents.
_____

Calendar Date:   April 24, 2015

Before:  Peters, P.J., Garry, Egan Jr. and Lynch, JJ.

_____

        O'Connell & Aronowitz, Albany (Cornelius D. Murray of
counsel), for appellant.

        Eric T. Schneiderman, Attorney General, Albany (Victor
Paladino of counsel), for respondents.

_____

Lynch, J.

        Appeal from a judgment of the Supreme Court (Devine, J.),
entered January 23, 2014 in Albany County, which, in a proceeding
pursuant to CPLR article 78, granted respondents' motion to
dismiss the petition.

        Petitioner owned and operated a nursing home facility in
the City of Middletown, Orange County until March 2010, when the
facility was sold to its current operator.  The facility provided
services to patients who were eligible for both Medicaid and
Medicare Part B benefits.  To account for this dual coverage, the

Department of Health (hereinafter DOH), headed by respondent Commissioner of Health, adopted a regulation that "carves out" from the initial Medicaid reimbursement rate an estimated amount of the Medicare Part B reimbursement that the facility would first receive for services provided (see 10 NYCRR 86-2.17 [m]). In turn, DOH is required to perform a reconciliation comparing the amount of Medicare reimbursement that the facility actually received with the amount withheld from the Medicaid rates. The net result could demonstrate that the facility received an underpayment or overpayment of Medicaid funds.

In 2008, petitioner filed a Medicaid reimbursement rate appeal with DOH, seeking over $600,000 in claimed underpayments from 1995 to 2007. DOH acknowledged receipt of the appeal, but did not complete the required reconciliation. After selling the facility, petitioner continued to demand that DOH process its appeal. When petitioner's February 8, 2013 demand letter went unanswered, petitioner commenced this CPLR article 78 proceeding seeking to compel respondents to complete the reconciliation and pay the outstanding balance directly to petitioner. Supreme Court granted respondents' motion to dismiss the petition for lack of standing, and this appeal by petitioner ensued.

We affirm. Standing requires a party to demonstrate both an injury-in-fact and an injury falling "within the zone of interests or concerns sought to be promoted or protected by the statutory provision under which the agency has acted" (New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 211 [2004]). Petitioner has clearly demonstrated an injury-in-fact particularly since it initiated the rate appeal while it was still the owner/operator (see Matter of Dental Socy. of State of N.Y. v Carey, 61 NY2d 330, 334 [1984]). The more difficult question is whether petitioner meets the zone of interests component as a former owner/operator. Our review shows that the governing statute and regulations contemplate the payment of Medicaid reimbursement to the current provider of medical services or the current operator of a nursing home facility. Specifically, Social Services Law § 367-a (1) (a) mandates that all payments "shall be made to the person, institution, state department or agency or municipality supplying such medical assistance" and expressly prohibits the assignment of a

reimbursement claim to a third party. This legislation was designed to "relieve DOH from the potential liability and increased administrative burdens involved in such assignments" (Legislative Mem, 1971 McKinney's Session Laws of NY at 2419-2420; see IMFC Professional Servs. v State of New York, 59 AD2d 1047, 1048 [1977]). Correspondingly, nursing home facilities qualify for Medicaid payments provided that they possess a valid operating certificate issued by the Commissioner (see Public Health Law § 2801 [2], [3], [4] [b]; 10 NYCRR 86-2.1 [a]). An operating certificate "shall only be used by the established operator for the designated site or operation" (10 NYCRR 401.2 [b]). When, as here, the owner/operator sells a facility to a party who intends to continue operating the facility, it may transfer the operating certificate to the new operator only upon approval of the Public Health Council (see 10 NYCRR 401.3 [c]). Read together, these provisions establish that it is the current operator of a nursing home facility — i.e., the holder of a valid operating certificate — that is entitled to receive Medicaid payments and, thus, is the protected party within the statutory zone of interest.

This construction is consistent with DOH's methodology of processing all payments and recovery of overpayments of Medicaid funds through the current operator.[1] Moreover, the purchase agreement between petitioner and the current operator provides that any reimbursement due petitioner from the rate appeal would constitute "trust funds" that the current operator is obligated to directly turn over to petitioner — a provision that reflects the understanding of the contracting parties that Medicaid reimbursements would be processed through the licensed operator of the facility.[2]

---

[1] As explained in the affidavit of Cynthia Treis, an associate health care analyst with DOH, any overpayment or underpayment of Medicaid reimbursements are adjusted through the Medicaid reimbursement rate due the current operator of a facility.

[2] Correspondingly, as a condition of DOH's approval for the licensing of the current owner to operate the facility, the

As such, we conclude that Supreme Court correctly determined that petitioner, as a former owner/operator, lacks standing to pursue this proceeding (see Matter of Astor Gardens Health Care Ctr. v Novello, 304 AD2d 961, 963 [2003]).  The record confirms that as between petitioner and the current operator, petitioner has contractually preserved its entitlement to any reimbursement that may be due.  Nonetheless, even if, as petitioner claims, the current operator is uncooperative and has no incentive to participate, it is the entity that has standing to pursue a recovery of any Medicaid reimbursements determined upon a reconciliation.

Peters, P.J., Garry and Egan Jr., JJ., concur.

ORDERED that the judgment is affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court

---

purchase agreement expressly obligates the current owner to assume liability to DOH for all Medicaid overpayments made to petitioner prior to the closing date.  Petitioner in turn remains contractually liable to the current owner for any such overpayments.